*In re* VANESSA VERGNE TORRES, querellada.

*Número:* 6630      *Resuelto:* 27 de mayo de 1988

*Govén D. Martínez Surís, Director de la Oficina de Inspección de Notarías,* querellante; *Vanessa Vergne Torres,* por derecho propio.

PER CURIAM: El 3 de diciembre de 1987, en atención a una comunicación del Director de la Oficina de Inspección de Notarías, Lic. Govén D. Martínez Surís, expositiva de las di-

ficultades que confrontaba para localizar y examinar los protocolos y registros de la notario Vanessa Vergne Torres, le concedimos a ésta veinte (20) días para que pusiera a disposición del Director de la Oficina de Inspección de Notarías su obra notarial. Esta resolución le fue notificada por conducto de su esposo.

El 1ro de febrero compareció e informó, en esencia, que debido a situaciones delicadas de salud de su hijo y señora madre, no había podido cumplir con ese requerimiento. Ofreció sus excusas y nos solicitó hasta el 8 de febrero de 1988 para la revisión de los aludidos protocolos. Accedimos a extender el término, con carácter final, hasta el 27 de febrero.

No cumplió con dicho mandato. El 24 de marzo ordenamos al Alguacil General la inmediata incautación de su obra notarial, la suspendimos provisionalmente del ejercicio del notariado y le concedimos veinte (20) días para que compareciera por escrito a mostrar causa por la cual no debería ser suspendida definitivamente ni disciplinada en la práctica de la abogacía. Luego de varias gestiones infructuosas, finalmente el 31 de marzo el alguacil logró diligenciar parcialmente nuestro mandamiento y obtuvo la entrega de los protocolos correspondientes a 1986 y 1987. No entregó el Registro de Afidávit.

Como resultado del examen realizado por el Director de la Oficina de Inspección de Notarías, se hallaron en los protocolos innumerables deficiencias referentes a omisiones en la cancelación de sellos de rentas internas de diversos valores; faltaba foliar en el protocolo de 1986 (desde el folio 49 en adelante); el protocolo de 1987 estaba sin encuadernar, y todavía el Registro de Afidávit no había sido entregado.

El 25 de abril de 1988 el Director de la Oficina de Inspección de Notarías nos informó que la notario Vergne Torres había corregido las deficiencias en los protocolos de 1985 y 1986, aunque la foliación correspondiente a este último año estaba incompleta. Respecto al protocolo de 1987, explicó

que no estaba encuadernado, faltaba foliarlo en números y se había omitido cancelar en treinta y cuatro (34) escrituras un total de $551 en valor de sellos de rentas internas. Subsiguientemente, el 19 de mayo nos informó que el día anterior la notario Vergne Torres había concluido la corrección de estas deficiencias y entregado el Registro de Afidávit, el cual fue hallado correcto. Sólo restaba la encuadernación de dicho protocolo.

## II

Reiteradamente hemos enfatizado que la notaría es función de cuidado y debe ser ejercida con suma diligencia y celo profesional. La observancia de las disposiciones de la ley es esencial. En todas sus etapas, "[r]eafirmamos nuestro compromiso de velar por y lograr la máxima excelencia en la profesión y función notarial. *In re Tirado Saltares*, 118 D.P.R. 576 (1987); *In re Pedraza González*, 118 D.P.R. 87 (1986); *In re Aponte Arch[é]*, 117 D.P.R. 837 (1986); *In re De Jesús Fuentes*, 117 D.P.R. 90 (1986); *In re Todd Arias*, 117 D.P.R. 10 (1986); *In re Rivera Lassen*, 116 D.P.R. 325 (1985); *In re Colón de Zengotita*, 116 D.P.R. 303 (1985)". *In re González González*, 119 D.P.R. 496, 499 (1987). La omisión en cancelar los correspondientes sellos de rentas internas como conducta repetitiva es de carácter grave. *In re Tirado Saltares*, supra.

Las circunstancias antes descritas, el carácter repetitivo y el cúmulo de las serias omisiones en que incurrió la notario Vergne Torres, su previo historial(¹) e inexcusable tardanza

---

(¹) Con anterioridad, el 16 de mayo de 1985, había sido suspendida de la notaría por incumplimientos en rendir los índices semanales y no haber respondido a tiempo a nuestros requerimientos. El 3 de octubre de 1985, luego de un informe del Procurador General expositivo de la situación peculiar de salud familiar que presentaba, sustituimos dicha sanción por una amonestación. Sin embargo, en esa ocasión fue apercibida a "cumplir bien y fielmente" las obligaciones dimanantes del ejercicio notarial.

en entregar el Registro de Afidávit, *nos obligan a decretar su suspensión del ejercicio de la notaría indefinidamente.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Rebollo López, la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton disienten en cuanto a la imposición de la sanción disciplinaria, la cual limitarían a un (1) año.

